# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3304-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.N.,

     Defendant-Appellant,

and

K.C.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
J.N., a minor.

_____

Submitted June 21, 2022 – Decided July 5, 2022

Before Judges Fisher and Whipple.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FG-12-0036-21.

Joseph E. Krakora, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

S.N. (Steve) and K.C. (Kelly) are the biological parents of J.N. (John), born in October 2016. On February 5, 2021, Kelly effectuated an identified surrender of her parental rights to the Division of Child Protection and Permanency (Division). The Family Part terminated Steve's parental rights on June 29, 2021. He now appeals raising the following issues.

THE TRIAL COURT WAS CLEARLY MISTAKEN IN ITS LEGAL CONCLUSION THAT [DIVISION]'S EVIDENCE PRESENTED AT THE GUARDIANSHIP TRIAL WAS CLEAR AND CONVINCING ON ALL FOUR PRONGS OF N.J.S.A. 30:4C-15.1a AND THEREFORE

2

TERMINATION OF PARENTAL RIGHTS WAS IN JOHN'S BEST INTERESTS.

A. Prongs One and Two: The trial court's legal conclusion that John's safety, health, or development has been or will continue to be endangered by the parental relationship and that Steve was unwilling or unable to eliminate the harm or was unwilling or unable to provide a safe and stable home was erroneous and not supported by adequate, substantial, and credible evidence in the record.

B. Prong Three: The trial court's legal conclusion that [Division] made reasonable efforts to provide services was erroneous and not supported by substantial and credible evidence in the record and the court made no required findings regarding alternatives to termination of parental rights; however, there was ample evidence in the record that [Kinship Legal Guardianship (KLG)] or legal custody were alternatives to termination of parental rights.

C. Prong Four: The trial court's legal conclusion that termination of parental rights will not do more harm than good was erroneous and not supported by substantial and credible evidence in the record.

After a two-day trial, Judge James F. Hyland delivered a comprehensive oral opinion finding that the Division had satisfied all four prongs of the best interests of the child test set forth in N.J.S.A. 30:4C-15.1(a), justifying termination of Steve's parental rights. We affirm.

Judge Hyland's opinion addressed the evidence in great detail. A summary will suffice here. Both Kelly and Steve suffer from drug addiction

and have criminal histories. The Division became involved with the family after John was born. At birth, John tested positive for methadone. His breathing was labored, he exhibited mild tremors, and he had to be fed through a nasal tube. John was ultimately released to his parents' custody upon his discharge from the hospital after Steve, Kelly, and Kelly's parents, the maternal grandparents, signed a family agreement establishing a goal of a safe, drug-free home for the baby.

Our review of the record demonstrates that notwithstanding repeated assurances they were capable of parenting John, both Steve and Kelly could not demonstrate the ability to address their drug and substance abuse problems and maintain any level of sustained sobriety as John began to grow from a newborn to a school age child under the care of the maternal grandparents. The Law Guardian joined the Division in arguing for termination of parental rights.

At trial in June 2021, the Division called caseworkers Tara Cannon and Minerva Alers, maternal grandfather Patrick, and Karen D. Wells, Psy. D. Cannon gave an overview of the Division's early involvement, starting with John's withdrawal symptoms after birth, his various injuries over time, and his parents' battles with addiction and brushes with the law. She discussed John's

4

removal and successful placement with his maternal grandparents and explained why John's propensity for getting hurt in Steve's care and Steve's opiate addiction precluded John's placement with him. Cannon detailed Steve's lengthy recalcitrance with services and non-responsiveness to the Division's communication, thwarting attempts to include him on risk assessments, case planning, and Family Team Meetings. Steve's supervised visitation was inconsistent. He missed visitation fifty percent of the time. The problems with visitation eventually led John's grandparents to reject KLG in favor of adoption. Alers was the family's adoption worker. She described Steve as uncooperative and inconsistent with communication.

Patrick testified that he and his wife are one hundred percent committed to providing John with a permanent home. He was open to keeping Steve in John's life on the condition Steve is consistent and sober but lacked faith that Steve could maintain long-term sobriety. Patrick understood and considered KLG but rejected it.

Dr. Wells, an expert in clinical and forensic psychology, testified about her psychological evaluation of Steve and a bonding evaluation with Steve and John on April 21, 2021. She also evaluated the bond between John and his maternal grandparents on March 30, 2021 and found significant contrast. Dr.

5

Wells found that John related to them as his primary psychological parents and that severing John's bond with his maternal grandparents would cause enduring and irreparable harm. Dr. Wells could not support Steve becoming John's primary caregiver because of his history of substance abuse, failure to demonstrate abstinence, and sporadic visits. Dr. Wells opined that John would not be harmed by termination and that any harm he might suffer would be neither enduring nor severe. John's maternal grandparents were capable of mitigating any harm that might arise because they prioritize John's needs and are not opposed to professional interventions. Dr. Wells opined KLG was not in John's interest because John needs permanency, and KLG would subject him to the inconsistency of Steve being able to petition for reunification.

Gerard Figurelli, Ph.D., a psychologist, was the only defense witness. Dr. Figurelli performed a bonding evaluation of both John and Steve and of John and his maternal grandparents on May 25, 2021. He opined the bond between John and his grandparents was positive, secure, emotional, and reciprocal. Dr. Figurelli acknowledged the maternal grandparents were John's central attachment figures and provided him with the consistency and stability that allowed him to thrive in their care. He agreed that the maternal grandparents are John's psychological parents. Although Steve and John

6

interacted appropriately, Dr. Figurelli noted that reciprocity was not always consistent.

John did not refer to Steve as his father nor did he recognize Steve as a psychological parent. Dr. Figurelli could not opine whether Steve would be an appropriate parent if sober, because he did not conduct a psychological or parenting assessment. Dr. Figurelli would only recommend KLG if Steve were able to offer a stable, sober, and consistent presence. Failing that, Steve would not be a positive presence in John's life.

The court entered an oral decision on June 29, 2021. It found that the Division established by clear and convincing evidence that Steve's parental rights to John should be terminated. Judge Hyland gave thoughtful attention to the importance of permanency and stability from the perspective of John's needs. Specifically, he found the Division had established by clear and convincing evidence all four prongs of the best-interests test, N.J.S.A. 30:4C-15.1(a), which permits termination of parental rights when in the best interests of the child. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999).

Our review of the court's decision is limited. We defer to the Family Part's expertise, Cesare v. Cesare, 154 N.J. 394, 411-13 (1998), and we are bound by the court's factual findings so long as those are supported by

A-3304-20

sufficient and credible evidence, <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007).

Parents have a constitutionally protected right to raise their biological children. <u>In re Guardianship of J.C.</u>, 129 N.J. 1, 9-10 (1992) (citing <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982)). The State may act to protect the welfare of the children, but this is a limited authority, applying to circumstances where the parent is unfit or the child has been harmed. <u>Id.</u> at 10. In New Jersey, to prevail in a proceeding to terminate parental rights, the Division must establish, by clear and convincing evidence, each element of the "best interests test." <u>See</u> <u>id.</u> at 9-10. At the time of trial and the court's order, the applicable statute required the Division to show:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement

outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a) (2015) (subsequently amended in July 2021).]

We conclude the factual findings of Judge Hyland are fully supported by the record and the legal conclusions drawn therefrom are unassailable. In particular, we note little support in the record for the assertion that the court erred finding the Division made reasonable efforts regarding alternatives to termination of parental rights and that KLG was a suitable alternative to adoption by the maternal grandparents.

Our Court has recognized that KLG is "not meant to be a substitute for the permanency of adoption but, rather, to provide as much permanency as possible when adoption is not feasible or likely and a relative is willing to care for the child." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 510 (2004). "When a caretaker 'unequivocally' asserts a desire to adopt, the statutory requirement that adoption is neither feasible nor likely is not satisfied." N.J. Div. of Youth & Family Servs. v. H.R., 431 N.J. Super. 212,

230-31 (App. Div. 2013).[1]  Where KLG was discussed by the Division with the resource parents but not proffered by witnesses as an option in the best interests of the child and adoption was feasible and likely, the court did not improperly decline KLG.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] We acknowledge that the statute has, since this case and case law, removed the second sentence of prong two.  Nonetheless, we will not retroactively use the amendment on appeal for purposes of our review.  See Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020) (reviewing favoring prospective application in general and the scenarios justifying retroactive application).  More importantly, we do not find it would affect our analysis because judges still consider the best interests of the child, where either KLG or adoption may be in the best interest of a child in any given case, because each case requires an "extremely fact sensitive" analysis.  See N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606 (2007).

A-3304-20